RECEIVED

NOT FOR PUBLICATION

DEC - 3 2015

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

AT 8:30_____M
WILLIAM T. WALSH
CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Civ. No. 15-7153 |
| v. | OPINION |
| WYETH HOLDINGS LLC, | |
| Defendant. | |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter has come before the Court on the United States of America's Consented-to

Motion to Enter Consent Decree. (ECF No. 4). Defendant Wyeth Holdings LLC ("Wyeth")

does not oppose the Motion, but this Court must review the Consent Decree to ensure that it is

fair, reasonable, and consistent with the goals of the Comprehensive Environmental Response,

Compensation, and Liability Act of 1980 ("CERCLA"). The Court has decided the Motion

without an oral hearing pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated

below, the Consented-to Motion to Enter Consent Decree is granted.

## BACKGROUND

The American Cynamid Superfund Site ("Site") is located in Bridgewater Township,

New Jersey. Wyeth owns the Site. Wyeth's predecessor, the American Cynamid Company,

purchased the Site in 1929. The Site was used for pharmaceutical and chemical manufacturing

for decades. As a result of the manufacturing activities at the Site, the soil at the site is

contaminated with volatile organic compounds, semi-volatile organic compounds,

polychlorinated biphenyls, and metals. The groundwater underneath the site is similarly contaminated with metals and volatile organic compounds such as benzene.

CERCLA empowers the Environmental Protection Agency ("EPA") to pursue a variety of administrative and legal actions against hazardous contaminated site owners, including negotiating settlements with site owners. 42 U.S.C. § 9622. After multiple rounds of negotiation between EPA and Wyeth, the United States published a notice of settlement and the present Consent Decree in the Federal Register, inviting comments from the public on the settlement and Consent Decree. Two comments were received. The Township of Bridgewater supports the Consent Decree, while one member of the public expressed dissatisfaction with the Consent Decree.

The Consent Decree requires Wyeth to remedy a majority of the Site, which EPA designates "Operable Unit 4." Wyeth must also complete the remaining work required to remedy "Operable Unit 2." This work is estimated to total $193,500,000. EPA had previously spent approximately $2,900,000 on cleanup efforts, of which Wyeth had reimbursed EPA approximately $1,100,000. The Consent Decree requires Wyeth to reimburse EPA an additional $1,000,000 for the EPA's previous cleanup work. The Consent Decree provides Wyeth with some protection from future administrative actions, but the United States reserves claims related to natural resource damages and the portions of the Site that EPA has not yet selected a remedy for. On September 29, 2015, the United States filed the present Complaint alleging Wyeth's liability under CERCLA, and simultaneously lodged the Consent Decree with this Court.

## LEGAL STANDARD

If a consent decree is "fair, reasonable, and consistent CERCLA's goals" a court should approve the consent decree. *In re Tutu Water Wells CERCLA Litig.*, 326 F.3d 201, 207 (3d Cir. 2003). In examining a consent decree's fairness, a court must consider both procedural and

2

substantive fairness. *Id.* Courts should give deference to EPA's expertise in crafting consent

decrees, and to CERCLA's policy of encouraging settlements. *United States v. Se. Pennsylvania*

*Transp. Auth.*, 235 F.3d 817, 822 (3d Cir. 2000).

## ANALYSIS

### I. Fairness

A. Procedural Fairness

Procedural fairness requires that settlement negotiations take place at arm's length.

*United States v. Cornell-Dubilier Elecs., Inc.*, No. 12-5407, 2014 WL 4978635, at *4 (D.N.J.

Oct. 3, 2014). When evaluating procedural fairness, a court must examine the negotiation

process leading to the consent decree and gauge its "candor, openness and bargaining balance."

*United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 86 (1st Cir. 1990).

EPA and Wyeth conducted negotiations in which they had adverse interests. There was a

bargaining balance as EPA is an expert agency in enforcing environmental statutes, while Wyeth

was represented by experienced counsel in a series of settlement discussions. There is no

evidence that the negotiations lacked candor or openness. Therefore, the Consent Decree is

procedurally fair.

B. Substantive Fairness

Substantive fairness focuses on accountability. Each party involved must bear the cost of

the harm for which it is legally responsible. *Cannons Eng'g Corp.*, 899 F.2d at 87. A consent

decree is substantively fair if it correlates with a reasonable estimate of the parties' comparative

fault. *Id.*

Wyeth and its predecessor, the American Cyanamid Company, have owned the Site since

1929. While another chemical company owned the Site from 1915-1929, the manufacturing

plant at the Site did not significantly expand until after 1929. Wyeth has agreed to perform all of

3

the injunctive relief sought in the Complaint, and to reimburse EPA for past cleanup costs.

Neither Wyeth, EPA, nor any outside party have suggested that any entity besides Wyeth should

be responsible for this cleanup and reimbursement. Therefore, the consent decree properly holds

Wyeth responsible for the cleanup at the Site, making the consent decree substantively fair.

## II. Reasonableness

To determine if a consent decree is reasonable, a court must examine three factors: "(1)

the technical effectiveness of the plan for environmental cleanup; (2) the amount of monetary

compensation to the public; (3) and the overall fairness of the decree in light of the relative

strengths of the parties and foreseeable risks of loss." *United States v. Nat'l R.R. Passenger

Corp.*, No. 86-1094, 1999 WL 199659, at *14 (E.D. Pa. Apr. 6, 1999), *aff'd sub nom. United

States v. Se. Pennsylvania Transp. Auth.*, 235 F.3d 817 (3d Cir. 2000).

Wyeth has agreed to carry out EPA's plans for remedying the Site. This Court defers to

EPA's expertise in selecting effective remedies for the Site, and therefore finds the plan laid out

in the Consent Decree to be technically effective. Examining the second factor, the amount of

monetary compensation to the public in the Consent Decree is extremely favorable. Wyeth has

agreed to reimburse EPA for all but $800,000 of its previous cleanup costs, and to pay

approximately $193,500,000 in cleanup costs going forward. One public comment argued that

the amount of compensation to the public was too low. (Mot. to Enter Consent Decree 11, ECF

No. 4-1). The commenter asserted that Wyeth should pay the full cost of the cleanup, plus

additional compensation to people who live near the Site. (*Id.*). However, Wyeth will pay for all

the remedies EPA has selected under the Consent Decree, and the purpose of the Consent Decree

is for Wyeth to remedy the environmental damage to the Site, not to resolve individual tort

claims. Additionally, the Township of Bridgewater's public comment supports the Consent

Decree, and does not suggest that the compensation to the public is insufficient. (Comment by

Township of Bridgewater, Ex. 2, ECF No. 4-1). Therefore, this Court finds that the amount of monetary compensation to the public weighs in favor of entering the Consent Decree.

Examining the third reasonableness factor, the Consent Decree appears fair in light of the strength of each party and the foreseeable risk of loss if the United States had to pursue litigation against Wyeth. The United States appears to have a very strong case against Wyeth based on its long-term ownership of the Site; however, litigation against sophisticated lawyers can be costly and could significantly delay the cleanup of the Site. Wyeth has agreed to almost two hundred million dollars worth of cleanup and reimbursement, with the possibility of future costs for cleaning up smaller parts of the Site not covered by the Consent Decree. Therefore, under all three factors, the Consent Decree is reasonable.

### III. Consistency with CERCLA's Goals

CERCLA is a complex statutory scheme designed to ensure that the nation's hazardous waste sites are cleaned up by the parties who polluted the sites. *In re Tutu*, 326 F.3d at 206. CERCLA encourages settlements "in order to expedite effective remedial actions and minimize litigation." 42 U.S.C. § 9622(a).

The Consent Decree is consistent with CERCLA's goals. The Consent Decree mandates that the Site be cleaned up by the liable Site owner. CERCLA explicitly encourages settlements such as this one, as it will expedite the cleanup of the Site.

### CONCLUSION

For the foregoing reasons, this Court finds that the Consent Decree is fair, reasonable, and consistent with CERCLA's goals. An appropriate Order will follow.

ANNE E. THOMPSON, U.S.D.J.

5